

**ORDERED in the Southern District of Florida on January 11, 2011.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

Tagged Opinion

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Case No. 10-15516-BKC-LMI |
| S&G FINANCIAL SERVICES OF SOUTH FLORIDA, INC., | Chapter 7 |
| Debtor. _____/ | |
| SONEET KAPILA, | ADV. CASE NO. 10-3311-BKC-LMI |
| Plaintiff, | |
| vs. | |
| S & G FINANCIAL SERVICES, LLC AND MERRICK FINANCIAL GROUP, LLC, | |
| Defendants. _____/ | |

**ORDER DENYING MOTION TO DISMISS FILED BY DEFENDANTS S & G FINANCIAL SERVICES, LLC AND MERRICK FINANCIAL GROUP, LLC AND INTREPID FINANCIAL SERVICES, INC.**

This matter came before the Court on the Motion to Dismiss (DE #6) filed by the Defendants S & G Financial Services, LLC ("S and G") and Merrick Financial Group, LLC ("Merrick") on August 8, 2010. Intrepid Financial Services, Inc. ("Intrepid") also filed a Motion

to Dismiss (attached to its Motion to Intervene) (DE #8) on August 10, 2010.[1]  Plaintiff Soneet Kapila, as the Chapter 7 Trustee (the "Trustee"), filed his Opposition Response on September 15, 2010 (DE #12).  The Court held a hearing on the Motions to Dismiss on September 17, 2010, and subsequently took the matter under advisement.  Having considered the relevant pleadings, the arguments of counsel, and the applicable law, for the reasons set forth below, the Defendants' Motions to Dismiss are denied.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(b).  The jurisdiction of the bankruptcy courts is set forth in 28 U.S.C. §1334, which provides, in pertinent part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. §1334(b).  28 U.S.C. §157(b) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."  28 U.S.C. §157(b).  This adversary proceeding is a core proceeding as that term is defined in 28 U.S.C. §157(b)(2)(A), (E) and (O).  Venue of this adversary proceeding in this district is proper under 28 U.S.C. §1409(a).

## BACKGROUND[2]

Defendant S and G is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Coral Gables, Florida.  Defendant Merrick is a limited liability company organized under the laws of the State of Florida, with its principal

---

[1] The Court granted Intrepid's Motion to Intervene on September 16, 2010 (DE #13).
[2] The facts are taken from the Complaint (DE #1).  For purposes of a Motion to Dismiss, all facts alleged in the Complaint are presumed to be true.  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

place of business in Coral Gables, Florida. The Debtor, S&G Financial Services of South Florida, Inc., is a corporation organized under the laws of the State of Florida. Soneet Kapila is the appointed Chapter 7 Trustee.

On March 4, 2010 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 bankruptcy petition.[3] At the time the petition was filed, Jorge Galceran ("Mr. Galceran") was the sole officer, director, and shareholder of the Debtor. (Compl. at ¶ 11). For at least the five-year period immediately preceding the Petition Date, the Debtor's primary business was the making of short-term mortgage loans. (*Id.* at ¶ 12). The Debtor obtained the funding it needed to finance its mortgage lending activities from various individuals or entities, whom the Debtor referred to as "investors." (*Id.* at ¶ 15). The Debtor offered these investors attractive potential returns[4] and security on their investments in the form of a full or partial assignment of certain mortgages which the Debtor held from its mortgagors. *Id.*

On March 30, 2009, one of the Debtor's investors, Paul Bleustein ("Mr. Bleustein"), obtained a final judgment for $850,141.11 against the Debtor. (*Id.* at ¶ 16). On May 4, 2009, Mr. Bleustein caused writs of garnishment to be served on various parties including International Finance Bank and BankUnited, FSB. (*Id.* at ¶ 17). The Debtor's accounts at these two institutions were frozen after the service of these writs. (*Id.* at ¶ 18).

Mr. Galceran has, at all relevant times, been the sole member and manager of S and G. (*Id.* at ¶ 19). At some point after the writs of garnishment were served, S and G opened a bank account at CNL Bank and began depositing checks payable to the Debtor into the S and G account. (*Id.* at ¶ 21). Mr. Galceran also has, at all relevant times, operated as the sole member and manager of Merrick. (*Id.* at ¶ 27). During this time frame, Mr. Galceran instructed certain

---

[3] The main bankruptcy case, *In re S&G Financial Services of South Florida, Inc.*, is case no. 10-15516-BKC-LMI.
[4] The Debtor purportedly offered investors returns of 10% to 12% per year. (Compl. at ¶ 15).

3

of the Debtor's mortgagors to make checks payable to Merrick in order to circumvent the writs of garnishment. (*Id.* at ¶ 29).

The Trustee commenced this adversary proceeding on July 9, 2010 by filing a two-count complaint (the "Complaint") against S and G and Merrick. Count I of the Complaint is a claim for substantive consolidation of S and G and the Debtor under 11 U.S.C §105. The Trustee alleges that the Debtor's financial statements never accurately reflected the sums due to the Debtor based on mortgage receivables and other assets of the Debtor which were allegedly diverted by Mr. Galceran to S and G. (*Id.* at ¶ 35). The Trustee further alleges that Mr. Galceran owns 100% of the equity of both the Debtor and S and G, and that S and G had no legitimate business purpose independent of the Debtor. (*Id.* at ¶¶ 37-38). The Trustee contends that because the assets of the Debtor and S and G are so intermingled, equity dictates consolidation of the two business entities for purposes of this bankruptcy proceeding. (*Id.* at ¶¶ 39-43). Count II is a claim for substantive consolidation of Merrick and the Debtor under 11 U.S.C. §105. As with S and G, the Trustee alleges that Mr. Galceran is the sole shareholder of both Merrick and the Debtor and that Merrick's finances are so intermingled with the Debtor, equity also dictates consolidation of the two entities for purposes of this bankruptcy case. (*Id.* at ¶¶ 47-52).

## **PARTIES' ARGUMENTS**

The Defendants argue that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)[5] because substantive consolidation is not an appropriate cause of action against non-debtor parties. The Defendants contend that the Court cannot invoke its equitable powers under 11 U.S.C. §105 to establish jurisdiction over a non-debtor entity not in

---

[5] The arguments raised by Intrepid in its Motion to Dismiss are essentially identical to the Defendants' arguments and have been incorporated into the Court's summary of the Defendants' position.

bankruptcy.[6]  The Defendants conclude that allowing such a cause of action would impermissibly allow a rule of equity to re-define the Defendants' property interests which are defined by applicable state law.  Rather, the Defendants contend, the Trustee has procedural alternatives at his disposal such as filing involuntary petitions against each of the Defendants under 11 U.S.C. §303[7] or avoidance actions under 11 U.S.C. §548[8] to seek the same results as substantive consolidation.  Moreover, the Defendants argue, even if the Court were to recognize a substantive consolidation cause of action under its equitable powers, the Trustee has failed to state such a claim in his Complaint.  In support of their argument, the Defendants argue that the Trustee has barely touched on the factors courts typically use to determine whether substantive consolidation is appropriate.

In response, the Trustee argues there is ample case law supporting the proposition that the bankruptcy court has the authority, under its equitable powers, to substantively consolidate debtor and non-debtor entities.  Having argued that substantive consolidation is a valid cause of

---

[6] Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[7] 11 U.S.C. §303(a) provides that "[a]n involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer, family farmer or corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced."

[8] 11 U.S.C. §548, provides in pertinent part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
> (A) Made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date such transfer was made or such obligation was incurred, indebted; or
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation.

5

Case 10-03311-LMI    Doc 30    Filed 01/11/11    Page 6 of 19

ADV. CASE NO. 10-3311-LMI

action, the Trustee highlights the allegations of his Complaint that adequately plead facts demonstrating that substantive consolidation would, in fact, be appropriate in this case. These allegations include the transfers of assets between the Debtor and the Defendants without observing corporate formalities, the commingling of assets and business functions between the Debtor and Defendants, and the fact that the Debtor and the non-debtor entities have a sole common principal, owner, and manager – Mr. Galceran. The Trustee also argues, similar to state law "alter ego" claims, that the Defendants had no independent existence and that these entities were formed solely to hinder, delay or defraud creditors. Finally, the Trustee addresses the argument made by the Debtor that the Trustee could achieve his goals by seeking to bring the Defendants into bankruptcy under 11 U.S.C. §303; the Trustee argues that substantive consolidation is a remedy entirely independent of the involuntary petition remedy.

## ANALYSIS

### A. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6), as made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b), provides a mechanism by which a party may seek to dismiss a complaint for "failure to state a claim upon which relief may be granted." In order to survive a motion to dismiss, a plaintiff must allege more than "labels and conclusions," or simply recite the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is considered factually plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This

plausibility standard is not synonymous with a "probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Failure to state a claim for relief is a purely legal question. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1270 n.19 (11th Cir. 2009). While the court must accept well-pled facts as true, the court is "not required to accept a plaintiff's legal conclusions." *Id.* at 1260. The courts have the authority to "fully resolve any purely legal question" on a motion to dismiss and consequently, there is no "inherent barrier to reaching the merits [of a claim] at the 12(b)(6) stage." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

The Court must address two separate issues here. The threshold issue is whether the Court has the authority to substantively consolidate a debtor and non-debtor entity. If the answer to this question is no, then the Court need not proceed any further in its analysis and the Complaint must be dismissed. However, if the Court does recognize such an action, then it must determine whether the Complaint pleads facts which could plausibly sustain this cause of action.

### B. SUBSTANTIVE CONSOLIDATION OF DEBTORS AND NON-DEBTORS

There are no provisions in the Bankruptcy Code that specifically authorize the bankruptcy court to approve substantive consolidation of separate entities into a single bankruptcy case.[9] However, most circuits,[10] including the Eleventh Circuit, recognize that bankruptcy courts have the authority to substantively consolidate bankruptcy cases pursuant to their general equitable powers. *Eastgroup Properties v. Southern Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991). In *Eastgroup Properties*, the Eleventh Circuit held that under the

---

[9] In the context of a joint case involving a debtor and the debtor's spouse, the Bankruptcy Code provides that "the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." 11 U.S.C. §302(b).

[10] *See FDIC v. Colonial Realty Co.*, 966 F.2d 57 (2d Cir. 1992); *First Nat'l Bank of El Dorado v. Giller* (*In re Giller*), 962 F.2d 796 (8th Cir. 1992); *In re Drexel Burnham Lambert Grp.*, 138 B.R. 723 (Bankr. S.D.N.Y. 1992); *In re Vecco Constr. Indus.*, 4 B.R. 407 (Bankr. E.D. Va. 1980). *Accord, In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005); *Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.)*, 860 F.2d 515 (2d Cir. 1988).

7

principle of substantive consolidation, the assets of two or more related entities may be pooled together and the liabilities of these entities may then be satisfied from this common pool of assets. *Id.* The purpose of substantive consolidation is to ensure that all creditors are treated equitably. *Id.* In applying substantive consolidation to two or more debtor entities, "the inter-corporate liabilities of the consolidated entities" are eliminated. *Id.* However, substantive consolidation "almost invariably redistributes wealth among the creditors of the various entities." *Id.* (quoting *Drabkin v. Midland-Ross Corp.* (*In re Auto-Train Corp.*), 810 F.2d 270, 276 (D.C. Cir. 1987)). Therefore, substantive consolidation is an equitable remedy to be used "sparingly" and with caution. *Id.*; *see also Official Comm. of Unsecured Creditors of Verestar, Inc. v. American Tower Corp.* (*In re Verestar, Inc.*), 343 B.R. 444, 462 (Bankr. S.D.N.Y. 2006).

While the majority of courts recognize substantive consolidation of multiple bankruptcy cases, *see, e.g., In re MMH Automotive Grp.*, 400 B.R. 885 (Bankr. S.D. Fla. 2008) (Chapter 7 estates substantively consolidated); *Feltman v. Warmus* (*In re American Way Serv. Corp.*), 229 B.R. 496 (Bankr. S.D. Fla. 1999) (estates of debtor corporation and debtor subsidiary were substantively consolidated); *In re Vecco Constr. Indus.*, 4 B.R. 407 (Bankr. E.D. Va. 1980) (substantive consolidation of debtor and four debtor subsidiaries), courts are split on the issue of whether bankruptcy courts have the authority to substantively consolidate debtor and non-debtor entities.[11] In fact, of the federal circuit courts, only the Ninth Circuit, in *Bonham v. Compton* (*In re Bonham*), 229 F.3d 750 (9th Cir. 2000), has held that a court may order substantive consolidation of debtor and non-debtor entities.

In *In re Bonham*, the Ninth Circuit reversed the district court's reversal of the bankruptcy court's order authorizing the *nunc pro tunc* substantive consolidation of two non-debtor

---

[11] For a comprehensive listing and summary of cases that have found substantive consolidation both proper and improper in this context, *see* the bankruptcy court's decision in *In re Bonham*, 226 B.R. 56, 83-93 (Bankr. D. Alaska 1998).

8

corporate entities with the bankruptcy estate of an individual debtor. *Bonham* involved a failed ponzi scheme. The debtor was the sole shareholder and director of two corporations – World Plus, Inc. ("WPI") and Atlantic Pacific Funding Corp. ("APFC"). Citing *Sampsell v. Imperial Paper and Color Corp.*, 313 U.S. 215 (1941), the Ninth Circuit noted that "[t]he theory of substantive consolidation emanates from the core of bankruptcy jurisprudence," that is, as noted by Justice Douglas in *Sampsell* - "equality of distribution." 229 F.3d at 764. The court held that equity dictated that under the facts, WPI and APFC should be substantively consolidated, that is, merged, into the Bonham bankruptcy estate.

The seminal case on substantive consolidation is the Supreme Court's decision in *Sampsell*. In *Sampsell*, the Supreme Court held that a bankruptcy referee properly ruled that the property of a non-debtor corporation was property of the bankruptcy estate of its debtor principal shareholder. The Court noted that "[m]ere legal paraphernalia will not suffice to transform into a substantial adverse claimant a corporation whose affairs are so closely assimilated to the affairs of the dominant stockholder that in substance it is little more than his corporate pocket." *Id.* at 218. The Court affirmed the referee's decision that the corporation was formed simply to continue the debtor's business and that transfers made to this sham corporation were done to "hinder, delay, or defraud" the debtor's creditors. *Id.* As a result, the corporation was in no position to assert against the trustee that "it was so separate and insulated from [the debtor's] other business affairs as to stand in an independent and adverse position." *Id.* The Court also held that the bankruptcy referee correctly determined that a creditor of a sham corporation did not hold a prior claim against the debtor's estate because the creditor had at least "some knowledge" of the fraudulent character of the debtor's corporation. *Id.* at 221. Consequently, the creditor was entitled to only "pari passu participation" with the debtor's individual creditors.

*Id.* In so holding, the Court noted that the "power of the bankruptcy court to subordinate claims or to adjudicate equities arising out of the relationship between the several creditors is complete." *Id.* at 219.

While no other circuit court has directly held that bankruptcy courts have the power to substantively consolidate a debtor with a non-debtor entity, several courts have indirectly acknowledged, or, at least have not rejected, the concept. In *Auto-Train*, 810 F.2d 270, the case relied upon by the Eleventh Circuit in *Eastgroup Properties*, the court assumed the propriety of substantive consolidation of a non-debtor subsidiary into its debtor parent, but upheld the lower court's ruling that, based on notice issues, *nunc pro tunc* substantive consolidation was inappropriate. Nothing in *Eastgroup Properties* suggests that substantive consolidation of a debtor and non-debtor entity would be inappropriate. The issue in *Eastgroup Properties* was not whether a bankruptcy court could substantively consolidate related entities, but rather, "the standard which bankruptcy courts in this circuit should employ in making a determination of whether substantive consolidation is warranted." 935 F.2d at 249. In *In re Owens Corning*, 419 F. 3d 195 (3d Cir. 2005), the Third Circuit considered and ultimately, overruled, the substantive consolidation of debtor and non-debtor subsidiaries and affiliates. In setting forth its test for when substantive consolidation is appropriate, the court wrote "[t]he concept of substantively consolidating separate estates begins with a commonsense deduction. Corporate disregard as a fault may lead to corporate disregard as a remedy." *Id.* at 205. However, the Third Circuit made no distinction, in rendering its decision, between the debtor and non-debtor entities.

Bankruptcy courts in Florida and Georgia have expressly recognized the bankruptcy court's ability to substantively consolidate a debtor with a non-debtor. *See, e.g., In re Alico Mining, Inc.*, 278 B.R. 586 (Bankr. M.D. Fla. 2002) (concluding that the court had jurisdiction to

consolidate debtor and non-debtor entities under its general equitable power); *Munford, Inc. v. TOC Retail, Inc.* (*In re Munford, Inc.*), 115 B.R. 390 (Bankr. N.D. Ga. 1990) (holding that consolidation of debtor and non-debtor entities would be in the best interests of creditors generally).[12]

The Defendants cite to a number of cases in which courts have not extended the substantive consolidation doctrine to non-debtor entities. *Helena Chem. Co. v. Circle Land and Cattle Corp.* (*In re Circle Land and Cattle Corp.*), 213 B.R. 870, 877 (Bankr. D. Kan. 1997) (concluding that consolidation of a non-debtor is contrary to the Bankruptcy Code limitations for involuntary bankruptcy petitions); *In re Julien Co.*, 120 B.R. 930 (Bankr. W.D. Tenn. 1990) (concluding that an individual non-debtor's assets should not be brought into a corporate debtor's estate without the procedural protections of an adversary proceeding); *Goldman v. Haverstraw Assocs.* (*In re R.H.N. Realty Corp.*), 84 B.R. 356 (Bankr. S.D.N.Y. 1988) (denying the Trustee's motion to amend an involuntary Chapter 7 petition to add non-debtor entities for purposes of substantive consolidation); *In re DRW Property Co.*, 54 B.R. 489 (Bankr. N.D. Tex. 1985) (denying application to substantively consolidate debtor with 109 related non-debtor entities based on balancing test inquiry between harm to creditors and benefits to the parties).

Most of these cases can be distinguished rather easily.  In neither *DRW Property* nor *R.H.N. Realty* did the courts explicitly refute the existence of a cause of action for substantive consolidation of non-debtor entities with debtor entities, but simply found a lack of evidence to justify the consolidation under the facts of those cases.  In *R.H.N. Realty*, the court conceded that "consolidation is authorized when the affairs of the parties are so intertwined as to make it

---

[12] Outside of Florida and Georgia, a number of bankruptcy and federal district courts have also recognized the application of substantive consolidation to non-debtor entities including *Simon v. New Center Hospital* (*In re New Center Hospital*), 187 B.R. 560 (E.D. Mich. 1995); *White v. Creditors Service Corp.* (*In re Creditors Service Corp.*), 195 B.R. 680 (Bankr. S.D. Ohio 1996); and *Bracaglia v. Manzo* (*In re United Stairs Corp.*), 176 B.R. 359 (Bankr. D.N.J. 1995).

11

impossible to administer then as separate entities." 84 B.R. at 358. In *Julien*, the court specifically noted that "[t]his Court does not conclude that a bankruptcy court should never order substantive consolidation or that it lacks the equitable authority to do so in an appropriate factual environment." 120 B.R. at 936.

The remaining case cited by the Defendants, *In re Circle Land and Cattle Corp.*, followed those cases that hold that the bankruptcy court's equitable powers do not extend far enough to expand application of the substantive consolidation doctrine beyond debtor entities as there are no provisions in the Bankruptcy Code which specifically grant jurisdiction over non-debtor parties. These courts view the application of the substantive consolidation remedy over non-debtors as an impermissible use of the court's equitable power to take jurisdiction over a non-debtor without express statutory authority to do so. *Id.*

Conflating jurisdiction with power obscures the issue. The Eleventh Circuit, as well as many others circuit courts,[13] has recognized that a bankruptcy court's jurisdiction over non-debtors can be quite broad. In *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir. 1990), the court held that the bankruptcy court has jurisdiction over any proceeding relating to bankruptcy if "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." Moreover, "[t]he proceeding need not necessarily be against the debtor or the debtor's property." *Id.* at 788. There is no question that the outcome of the relief sought by the Trustee would have more than a conceivable effect on the bankruptcy case. Consequently, this Court finds that the Court clearly has jurisdiction to consider the relative rights of the non-debtor parties. Whether section 105 of the Bankruptcy Code authorizes this Court to grant the relief requested is a separate issue.

---

[13] *Smith v. Commercial Banking Corp.* (*In re Smith*), 866 F.2d 576 (3d Cir. 1989); *Fietz v. Great Western Savings* (*In re Fietz*), 852 F.2d 455 (9th Cir. 1988); *Wood v. Wood* (*In re Wood*), 825 F.2d 90 (5th Cir. 1987); *Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc.* (*In re Dogpatch U.S.A., Inc.*), 810 F.2d 782 (8th Cir. 1987).

This Court holds that, consistent with the directive of *Sampsell*, it is well within this Court's equitable powers to allow substantive consolidation of entities under appropriate circumstances, whether or not all of those entities are debtors in bankruptcy. Moreover, this Court holds that this Court has jurisdiction over non-debtor entities to determine the propriety of an action for substantive consolidation insofar as the outcome of such proceeding could have an impact on the bankruptcy case.

### C. INVOLUNTARY PETITIONS OR FRAUDULENT TRANSFER ACTIONS ARE NOT APPROPRIATE SUBSTITUTE REMEDIES.

The Defendants also argue that the Trustee could invoke other Bankruptcy Code provisions, and in particular, initiating an involuntary petition under 11 U.S.C. §303, or pursuing transfers pursuant to the provisions of 11 U.S.C. §548, to bring the non-debtor entities into the bankruptcy process, while also affording the non-debtor entities procedural protections not provided by substantive consolidation. The Defendants argue that using section 105 when these remedies are available conflict with the purposes of the Bankruptcy Code. The Defendants are incorrect.

As noted by the court in *Munford*, substantive consolidation and the right to file an involuntary petition are two entirety different remedies. Compelling the Trustee to file an involuntary bankruptcy petition under 11 U.S.C. §303 would defeat the very purpose of substantive consolidation. As the *Munford* court wrote, "in the present context the substantive consolidation of a nondebtor's assets with those of a debtor is substantially different from the involuntary petition remedy of § 303; and, therefore, it does not circumvent the requirements of that provision." 115 B.R. at 397. The *Munford* court further concluded that imposing the insolvency requirement of 11 U.S.C. §303 would "subvert the entire purpose of substantive

13

consolidation in this case, which is to recover assets from a financially sound affiliated entity." *Id.* Consequently, "[s]ubstantive consolidation . . . must be considered as a remedy which is entirely independent of, and indeed inconsistent with, the involuntary petition remedy. Accordingly, it is recognized as an alternative means to bring a nondebtor's assets into a debtor's estate." *Id.* at 397-98; *see also Alico Mining*, 278 B.R. at 588 (same).

Similarly, recovery of transfers pursuant to 11 U.S.C. §548 invokes different legal principles. The standard for alleging a claim under 11 U.S.C. §548 is more stringent than that for alleging substantive consolidation as a substantive consolidation claim "does not require a finding of fraud or an intent to hinder and delay creditors." *Alico Mining,* 278 B.R. at 588.

The Trustee argues in his memorandum that the actions of Galceran when creating S&G and Merrick are such that, under state law, a court could impose a remedy of alter ego and thereby pierce the corporate veil. However, as noted by several courts, including the Bankruptcy Court in the *Circle Land* case, state corporate law and federal bankruptcy law are separate and distinct concepts. 213 B.R. at 875. Intrepid argues that the Trustee has failed to prove alter ego. This Court need not make a finding that the Debtor is the alter-ego of the Defendants to apply the substantive consolidation doctrine. Piercing the corporate veil under an alter-ego theory is not a prerequisite to the utilization of the bankruptcy law remedy of substantive consolidation. *White v. Creditors Service Corp.* (*In re Creditors Service Corp.*), 195 B.R. 680, 689 (Bankr. S.D. Ohio 1996) ("The bankruptcy remedy of substantive consolidation ensures the equitable distribution of property to all creditors, while on the other hand, piercing the corporate veil is a limited merger for the benefit of a particular creditor."). Nonetheless, were this Court required to make a preliminary finding on this issue, the Court would find that the Trustee has adequately plead that Merrick and S and G are alter egos of the Debtor for purposes of veil piercing under state law.

14

*See Danai Jai-Alai Palace, Inc., v. Sykes*, 450 So.2d 1114 (Fla. 1984); *Accord, Seminole Boatyard, Inc. v. Christoph*, 715 So.2d 987 (Fla. 4th DCA 1998).

In *Owens Corning*, the Third Circuit provided a summary of how substantive consolidation is a remedy in addition to, rather than an alternative of, other remedies that deal with disregard of a corporate entity -

> Each of these remedies has subtle differences. "Piercing the corporate veil" makes shareholders liable for corporate wrongs. Equitable subordination places bad-acting creditors behind other creditors when distributions are made. Turnover and fraudulent transfer bring back to the transferor debtor assets improperly transferred to another (often an affiliate). Substantive consolidation goes in a direction different (and in most cases further) than any of these remedies; it is not limited to shareholders, it affects distribution to innocent creditors, and it mandates more than the return of specific assets to the predecessor owner. It brings all the assets of a group of entities into a single survivor. Indeed, it merges liabilities as well. "The result," to repeat, "is that claims of creditors against separate debtors morph to claims against the consolidated survivor."

419 F.3d at 206 (internal citation omitted).

### D. THE TRUSTEE ADEQUATELY PLED A CLAIM FOR SUBSTANTIVE CONSOLIDATION.

In the Eleventh Circuit, the party moving for substantive consolidation must satisfy a two-prong test to establish a prima facie case for substantive consolidation: (1) the movant must show that there is substantial identity between the entities to be consolidated; and (2) that consolidation is necessary to avoid some harm or to realize some benefit. *Eastgroup Properties,* 935 F.2d at 249; *see also Alico Mining*, 278 B.R. at 588 ("Before ordering substantive consolidation . . . a bankruptcy court must conduct a searching inquiry to ensure that consolidation yields benefits that would offset the harm it inflicts on objecting parties."). In evaluating whether the party seeking consolidation has met his initial burden, the courts often look to seven factors outlined by the bankruptcy court in *Vecco Construction*:

(1) The degree of difficulty in segregating and ascertaining individual assets and liability;

(2) The presence or absence of consolidated financial statements;

(3) The profitability of consolidation at a single physical location;

(4) The commingling of assets and business functions;

(5) The unity of interests and ownership between the various corporate entities;

(6) The existence of parent and inter-corporate guarantees on loans; and

(7) The transfer of assets without formal observance of corporate formalities.

4 B.R. at 410. While these factors are useful in determining whether substantive consolidation is appropriate, courts have stressed that these factors are not exclusive and that no single factor is likely to be "determinative of the court's inquiry." *Eastgroup Properties*, 935 F.2d at 250. In sum, "the remedy of substantive consolidation is appropriate . . . when it has been shown that the possibility of economic prejudice which would result with continuing corporate separateness outweighed the minimal prejudice that substantive consolidation might cause." *In re Murray Indus.*, 119 B.R. 820, 829 (Bankr. M.D. Fla. 1990).

Once the proponent has satisfied this initial burden and has made a prima facie case for substantive consolidation, the burden then shifts to an objecting creditor "to show that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." *Eastgroup Properties,* 935 F.2d at 249.

Here, the Trustee has met his initial pleading burden of establishing a prima facie case of substantive consolidation. Contrary to the Defendants' assertion, the Trustee has adequately alleged facts that, if proven, would support a finding of substantial identity between the Debtor and the Defendants. The Trustee has alleged that Mr. Galceran was the sole officer, director, and manager of the Debtor and the Defendants. (Compl. at ¶¶ 11, 19, 27). The Trustee has also

alleged that Mr. Galceran owned 100% of the equity of the Debtor and the Defendants. (*Id.* at ¶¶ 37, 47). Moreover, the Trustee has alleged that the Debtor and Defendants transferred assets among themselves without the observance of corporate formalities. (*Id.* at ¶¶ 22-24, 29-31, 36, 45, 46). The Trustee has also alleged that the Debtor and Defendants commingled assets and business functions. (*Id.* at ¶¶ 22, 23, 29-31, 38, 39, 48). In evaluating the factual allegations, it appears that the Trustee has touched on at least five of the *Vecco* factors. The Court finds that the Trustee has met the first prong of his initial burden and has set forth a plausible claim that there is a substantial identity of the Debtor and the Defendants.

With respect to the second prong, there is certainly a benefit in allowing creditors to reach assets that would otherwise be unavailable to them, but have an arguable right to access. Taking the allegations in the Complaint as true, as the Court must do, the Trustee makes a plausible case for showing that the benefit which would be conferred upon creditors is greater than the potential harm to the non-debtor entities which are alleged to be nothing more than sham entities created to improperly shield the Debtor's assets from creditors. Given these observations, the Court finds that the Trustee has met his initial burden and the factual allegations are sufficiently plausible to survive the Defendants' Motion to Dismiss.

### E.  THE NOTICE ISSUE

Courts have stated that, at minimum, due to the nature of substantive consolidation of debtor and non-debtor entities, notice must be provided to all creditors, and such creditors must have an opportunity to be heard. *See In re Auto-Train Corp.*, 810 at 279; *United States v. AAPC, Inc.* (*In re AAPC, Inc.*), 277 B.R. 785, 789-90 (Bankr. D. Utah 2002); *Morse Operations, Inc. v. Robins Le-Cocq, Inc.* (*In re Lease-A-Fleet, Inc.*), 141 B.R. 869, 873 (Bankr. E.D. Penn. 1992).[14]

---

[14] At least one court has held that under certain circumstances it is not improper for the bankruptcy court to order substantive consolidation without affording notice to the non-debtors' creditors. *See Simon v. New Center Hospital*

With respect to substantive consolidation hearings, "the notice must be given in such a manner that is likely to reach its intended audience. Second, the content of the notice must reasonably inform the recipient of the nature of the upcoming proceeding." *Auto-Train*, 810 F.2d at 278.

Neither party mentioned the notice requirement in its pleadings. The parties briefly discussed the notice issue at the hearing held on September 17, 2010. At the hearing, the Trustee asserted that he believed he had notified all of the non-debtor entities' creditors. In *Auto-Train*, the court held that the creditor defendant could collaterally attack a *nunc pro tunc* consolidation order because it had not been given adequate notice of the consolidation hearing. *Id.* The Court here is not yet at the point where it must deliberate the merits of the substantive consolidation claims. The Court is only deciding whether the Complaint can survive a motion to dismiss. Consequently, it is premature for the Court to address the notice issue, but if and when the Court does conduct a substantive consolidation hearing or trial on the merits of the Complaint, adequate notice must be given not only to the Defendants and Debtor, but also to the Defendants' creditors.

## CONCLUSION

Having reviewed the relevant pleadings, the applicable case law, and the parties' arguments, the Court concludes that it has the authority to substantively consolidate a debtor with a non-debtor entity. Furthermore, the Trustee has met his burden of pleading a prima facie case for substantive consolidation. Therefore, it is accordingly ORDERED:

1. Defendants' Motions to Dismiss are DENIED with respect to both Counts I and II.

---

(*In re New Center Hospital*), 187 B.R. 560, 566 (E.D. Mich. 1995) (reasoning that the business dealings of the non-debtor entities and debtor were so inextricably intertwined that no entity that had extended credit to the alter egos of the debtor could reasonably be said to be without notice). This approach, however, appears to be the minority view and not one which the Court adopts today.

2.    Defendants are directed to file an answer no later than 21 days from the date of this order if such answer has not yet already been filed.

###

Copies furnished to:
Scott N. Brown, Esq.
Luis Salazar, Esq.

*Attorney Brown shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*